517 So.2d 1036 (1987)
Daniel M. SPARKS, Plaintiff-Appellant,
v.
PROGRESSIVE AMERICAN INSURANCE CO., et al., Defendants-Appellees.
No. 86-849.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Writ Denied December 18, 1987.
*1037 Watson, Murchison, Crews, Arthur & Corkern, Steven D. Crews, Natchitoches, for plaintiff-appellant.
Allen, Gooch, Bourgeois, Breaux & Robison, P.C., Sera H. Russell III, Babin & Babin, Stanley P. Babin, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Chris G. Robbins, Marx & Marx, G. Paul Marx, Lafayette, for defendants-appellees.
Before FORET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Daniel M. Sparks (hereafter Sparks) appeals the judgment of the trial court which dismissed Dallas Charles Broussard (hereafter Broussard) and Elk's Concrete Products, Inc. (hereafter Elk's) from his damage claim for injuries which resulted from a rear end collision. Sparks sued D. Charles Broussard Trucking Company, Inc. (hereafter Broussard Trucking), its insurer, Progressive American Insurance Company (hereafter Progressive), Broussard, Ulysses Hebert (hereafter Hebert), the driver of the tandem truck, and Elk's. The trial court determined Broussard Trucking was the lessee of the tandem truck and, as Hebert's employer, was responsible in damages for the rear end collision. Therefore, Broussard Trucking and its insurer were cast in judgment and ordered to pay Sparks medical expenses of $17,226.16, general damages of $150,000 and property damages of $2,294.30. Progressive's liability was limited to its $100,000 policy limits for bodily injury. Sparks appeals, contending the trial court erred in finding: 1) Elk's was not legally responsible for the negligent action of Ulysses Hebert; and 2) Dallas Charles Broussard, individually, was not legally liable for the negligent actions of Ulysses Hebert. We affirm.

FACTS
Elk's manufactures various building materials, principally concrete blocks, at its Lafayette plant. Broussard is Elk's production manager. One of the chief components of the products made by Elk's is aggregate, which is simply expanded clay. For many years Big River Industries, Inc., the only nearby supplier, shipped aggregate to Elk's either by rail or truck. In January 1982 Broussard suggested to Elk's that it would be mutually advantageous to allow him to purchase a truck and haul the aggregate to the Elk's plant. On approximately February 1, 1982, he purchased a truck and began hauling aggregate from Big River to Elk's. Thereafter Broussard hired Hebert to haul the aggregate, and the record indicates he started driving the truck on February 11, 1982. On February 15, 1982, the Louisiana Secretary of State issued a certificate of incorporation for D. Charles Broussard Trucking Company, Inc. effective retroactively to February 12, 1982, the date of filing. The accident in the case sub judice occurred on February 17, 1982, when Hebert, driving Broussard's truck which was leased to Broussard Trucking, rear ended Spark's 1980 Cadillac on Interstate 10.

ELK'S LIABILITY
The trial court concluded Elk's was not the employer of Hebert and, therefore, was not legally responsible for Hebert's negligent actions. Sparks contends that there was a master-servant, employer-employee relationship between Elk's and Hebert, and *1038 relies on Ogaard v. Wiley, 325 So.2d 642 (La.App. 3rd Cir.1975), as support for his position.
An employer is responsible for the torts of employees committed during the course and scope of employment. LSA-C.C. Art. 2320. However, Article 2320 is applicable only if a plaintiff first proves the existence of an employer-employee relationship. Sampay v. Morton Salt Co., 482 So.2d 752 (La.App. 1st Cir. 1985), writ granted, 488 So.2d 684, writ dismissed, 496 So.2d 315 (La.1986). Our jurisprudence holds that in determining whether such a relationship exists the most important factor is the right of the alleged employer to control the work of the individual. Roberts v. State, Through Louisiana Health & Human Resources Administration, 404 So.2d 1221 (La.1981). Factors to assess the right to control include: 1) the selection and engagement of the worker; 2) the payment of wages; and 3) the power of control and dismissal. Savoie v. Fireman's Fund Ins. Co., 347 So.2d 188 (La. 1977). Nevertheless, the jurisprudence is well settled that whether the employer actually exercises control or supervision over the worker is not as significant as whether, from the nature of the relationship, the employer had the right to do so. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955).
In support of his position that Elk's was vicariously liable, Sparks asserts: 1) Broussard Trucking hauled exclusively to Elk's plant and, if there would be other customers for the trucking company, Elk's would be the first one serviced; 2) Elk's fuel was used in Broussard Trucking's vehicle; 3) Broussard was an employee of Elk's and determined when Broussard Trucking was used; and 4) Elk's benefited from the hauling of aggregate.
In Ogaard, the case relied upon by Sparks, a tandem truck driven by Wiley struck the rear of a pickup truck, killing twelve persons. Wiley was clearly negligent. At the time of the accident Wiley, an employee of T. Robert, was driving a truck belonging to T. Robert, and the trial court found Wiley was in fact also employed by Alexander Mill & Grain Elevator, Inc .
In addressing the issue of whether Wiley was employed by Alexander Mill, the appellate court stated:
"We find Wiley to have been a Mill employee for these reasons. The owner of the tandem truck, T. Robert, was the son of the managing director of the Mill who was also one of the key managers of Saline. T. Robert's father informed the Mill manager, Mr. Haynes, that T. Robert was to be used for all hauling that could be handled by one truck. When more trucks were needed, T. Robert's truck was to be the first one called. This was rigidly followed for more than a year. Wiley would bring all records of his hauling to the Mill, and the Mill maintained the only records of Wiley's hauling. Each month the Mill calculated (from records turned in by Wiley), the amount due to Robert and would send a check to T. Robert. T. Robert would, in turn, make out his check for 20% of that amount as Wiley's pay. Although the Mill did not withhold income tax and social security, neither did Robert.
* * * * * *
The Mill called Wiley to report for hauling, told him when to load, how much, and where to go. On occasion, the Mill directed Wiley to pick up grain in Saline's fields and deliver it to the Mill. The only hauls made by Wiley for parties other than the Mill were those arranged by the Mill. The hauling agreement was terminable without notice. Advances were made by the Mill to Wiley, and later withheld from the Mill's payment to T. Robert. These arrangements were not extended to other drivers.
T. Robert was totally dependent on the Mill to determine the hauling for which he was paid, and the amount of money due. All original records, logs and tickets were delivered to the Mill.
* * * * * *
In summary: T. Robert had an agreement with the Mill that his truck would get all hauling that could be handled by one truck, and when more trucks were *1039 needed, his truck would be called first. T. Robert kept no records. He was completely dependent on the Mill to receive and hold original trip records and to determine his compensation. His truck was to be available at all times to the Mill and the driver was to be instructed by the Mill as to when and how much he was to haul from point to point. The Mill determined the origin and destination of each shipment. Occasionally, the Mill directed Wiley to pick up grain in Saline's fileds and deliver it to the Mill. Under these circumstances T. Robert was not an independent contractor, but an employee. He was employed by the Mill to furnish a service. Therefore Wiley was also the Mill's employee."
We find Ogaard clearly distinguishable. Unlike the Mill in Ogaard, Elk's was separate from Broussard Trucking: Broussard, as president of the trucking company, maintained all the records on the hauling at the corporate headquarters; though Broussard Trucking used Elk's diesel supply to fuel the truck, Elk's billed it for fuel used; Broussard Trucking paid Hebert directly and billed Elk's for the aggregate hauled; and Broussard repaired the truck on his own time. Elk's neither directed Broussard to use a particular driver nor did it participate in the hiring of Hebert. Finally, Hebert did not assist Elk's with the unloading of the aggregate. On these particulars it is clear that Ogaard is not identical to the case at hand.
In a related issue Sparks also argues that since Broussard was both president of Broussard Trucking and production manager for Elk's, he controlled when the trucking company would be used, where it would pick up the aggregate and where the aggregate would be delivered. While we would agree that these are indicia of Elk's control, the facts reveal less control than that implied. The only aggregate supplier was Big River and the only destination was Elk's. Considering the scrupulous segregation of business activities outlined above, we cannot say that Broussard's dual role alone was sufficient to find the control over Hebert necessary to impose liability on Elk's.
Next, Sparks argues that because the delivery of the aggregate was for Elk's benefit and was an integral part of its concrete business, that Elk's should be held liable as a matter of policy for the tortious acts committed by Hebert. We find the reasoning in Sampay v. Morton Salt Company, supra, rejecting a similar claim, dispositive of this argument. Furthermore, Broussard formed the trucking corporation not only as a service to Elk's, but more importantly as a means to generate profit for Broussard Trucking and, with that motive, to eventually expand the trucking service to other markets.
Lastly, Sparks argues that Hebert was a borrowed employee of Elk's. We disagree. As detailed above, Hebert's employment was clearly separate from Elk's, and Elk's never exercised the degree of control over Hebert necessary to make it liable for his negligence.
For the foregoing reasons, we conclude that the trial court was not manifestly erroneous in its determination that Hebert was not an employee of Elk's.

BROUSSARDINDIVIDUAL LIABILITY
Sparks argues that even though Broussard Trucking was incorporated, Broussard was individually liable for Hebert's negligence.
A corporation is a distinct legal entity from those persons who compose it. LSA-C.C. Art. 435. Only exceptional circumstances warrant the radical remedy of piercing the corporate veil. Chef's Fried Chicken, Inc. v. Bull McWood, Inc., 459 So.2d 1371 (La.App. 3rd Cir.1984), and they must be so strong as to indicate that the corporation and shareholder operated as one. Kingsman Enterprises v. Bakerfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir.1976).
Sparks asserts five reasons to impose liability personally on Broussard: 1) Broussard purchased the truck and leased it to the corporation prior to the beginning of corporate existence; 2) Broussard personally hired Hebert and Hebert began hauling *1040 operations prior to the formation of the corporation; 3) Broussard Trucking never answered Spark's lawsuit; 4) insurance was issued on the truck prior to Broussard Trucking's corporate existence; and 5) Broussard Trucking has held no corporate meetings since the accident.
We have analyzed the record in light of the reasons asserted by Sparks and conclude that the trial court correctly found no personal liability on Broussard's part. The corporation was legally formed prior to the accident and, though Hebert began work prior thereto, it was uncontroverted that his employment was ratified by the payment to him through a corporate bank account. Since Broussard was the chief executive officer under the corporate bylaws, he certainly was authorized to hire Hebert to work for the corporation. The same analysis is true for the lease of the truck: though the corporation was still being planned when it became the lessee of the truck, its use of the vehicle subsequent to the date of corporate existence serves as a ratification of that action. The issuance of insurance coverage prior to incorporation furthermore presents no assistance to Sparks' argument; Progressive stipulated coverage for the vehicle and stated it issued the policy to Broussard Trucking Service. Lastly, we find it of no moment to an adjudication of this issue that Broussard Trucking did not file an answer to Sparks' law suit. The record reflects that Broussard Trucking was served with the petition on January 26, 1983, and never filed responsive pleadings; despite this, Broussard Trucking has not objected to its adjudication of liability. Notwithstanding, we cannot impute individual liability to Broussard because of this.
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Sparks.
AFFIRMED.