592 So.2d 1282 (1992)
William and Patricia RIGGINS
v.
DIXIE SHORING COMPANY, INC., et al.
No. 91-C-0963.
Supreme Court of Louisiana.
February 6, 1992.
Veronica E. Henry, Wilkerson, Henry & Perez, Kern Anthony Reese, New Orleans, for applicant.
*1283 Caleb H. Didriksen, III, Didriksen & Carbo, New Orleans, for respondent.
Prior report: La., 590 So.2d 1164.

ON APPLICATION FOR REHEARING
Rehearing denied.
DENNIS, J., concurring in the denial of rehearing.
In considering the application, I was nearly persuaded to vote for a rehearing. In my opinion, the court on first hearing may not have given sufficient reasons for conducting a de novo weighing of the factual factors in deciding that the corporate veil should be pierced. The result reached was correct, however, because the trial judge's decision to allow piercing was crucially based on errors of law.
The plaintiffs herein asserted that the shareholders were acting in their own personal capacities when they damaged the plaintiffs because the shareholders disregarded the corporate status; and thus, this court should impose liability directly upon the shareholders for acts purportedly committed by the corporation and its agents. The plaintiffs have made no allegation that inequities arising from the utilization of the corporate status violate the policy behind allowing corporate status, aside from the allegations that the defendant shareholders disregarded the corporate entity. Compare Glazer v. Comm'n on Ethics for Public Employees, 431 So.2d 752 (La.1983). The policy of allowing limited liability for corporate shareholders is to promote commerce and economic growth by encouraging shareholders to make capital contributions to corporations without subjecting all of their patrimony to risks inherent in business ventures. Glazer, supra, at 757; see also H. Henn & J. Alexander, Laws of Corporations § 146, at 347 (3d Ed.1983). The mere fact that sustaining the corporate status will result in limited liability for the shareholders is not sufficient to show that inequities call for disregarding the corporate form. See C. Keating & G. O'Gradney, Fletcher Cyclopedia of the Law of Private Corporations § 41.20, at 639 (Rev.ed.1990).
The principal concern of the courts has been with reality and not form, with the corporation's operations and the individual defendant's relationship to the operations. DeWitt Truck Brokers v. W. Ray Flemming Fruit Co., 540 F.2d 681, 685 (4th Cir.1976). Some of the many factors which may properly be considered include: whether the corporation was grossly under capitalized, failure to observe corporate formalities; non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors; absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. Id., at 685-87. In reviewing a trial court's or jury's decision based on these factors, an appellate court should be mindful that the trier of fact's decision is principally a factual determination. The resolution of such a question by the trial court should not be disturbed unless manifestly erroneous or clearly wrong. See Rosell v. ESCO, 549 So.2d 840 (La.1989); DeWitt Truck Brokers, supra, at 684.
This exception to limited liability is a drastic remedy and must of course be construed very narrowly and exercised reluctantly and cautiously. See Sparks v. Progressive American Insurance Ins. Co., 517 So.2d 1036, 1039 (La.App. 3d Cir.1987); DeWitt Truck Brokers, supra, at 685, and cases cited therein. The imposition of personal liability on the shareholders is not a punishment for failing to follow the legal niceties of corporate law. See Fletcher Cyc. Corp. §§ 41.20, 41.25. Instead, it is an equitable doctrine used to grant relief to an injured person who dealt with a shareholder who through his own actions has confused the corporation's business, and even its existence, with his personal business affairs. Id. The corporate charter is a contract between the State and the shareholders *1284 with reciprocal rights and responsibilities. When a shareholder effectively ignores the corporation's existence by failing to comply with principles of corporate law, the courts have allowed the party relying on the shareholder's action to likewise disregard the corporate entity. It would be manifestly unjust to allow a shareholder the benefits of limited liability when that same shareholder did not discharge the responsibilities of corporate existence. However, a plaintiff's right to have a corporation's tort or breach of contract ascribed directly to its shareholders individually requires that he show that the shareholders disregarded the corporate entity or treated the corporation as their alter ego prior to or contemporaneously with the accrual of his cause of action. Therefore, of these factors, only those actions occurring prior to or at the time of the complained of conduct should be considered in determining if the shareholders have acted in disregard of the corporate entity such as would render them liable for the acts of the corporation.
The trial and appeals courts noted that the pertinent factors in this case cut both ways. Factors in support of disregarding the corporate status were that the employees were paid in cash with no records maintained, checks were made out to the shareholders individually instead of the corporation, no corporate minutes were kept, property owned by O.P. Bajoie was used by the corporation without remuneration, as well as other factors associated with corporate management. In determining whether or not the shareholders disregarded the corporate entity and acted as its "alter ego," commentators have generally recognized that adherence to corporate formalities must be substantial, though none have asserted that adherence must be observed 100%. See, e.g., Henn & Alexander, supra. Factors militating in favor of maintaining the corporate entity in the present case, however, included that the corporation operated openly under the corporate name, the corporation maintained checking accounts and filed the appropriate tax returns under the corporate name, the corporation showed profits and paid federal corporate income tax, informal meetings were held in a manner similar to a board of directors meeting; at the time of the complained of action, plaintiff testified that he understood that he was dealing with a corporation, and the corporation was not undercapitalized and showed gross receipts of $280,403 in 1985 and $251,963 in 1986.
Except for two additional factors, the trial court evidently would not have allowed the corporate entity to be disregarded: shortly prior to declaring bankruptcy, the corporation was divested, without explanation, of assets of over $100,000, and the successor business was using equipment which belonged to the bankrupt corporation. The trial court stated in its written reasons for judgment:
"Ultimately, reasons (5) and (6) [the disappearance of assets and use of equipment by the successor corporation] are the most damaging to [O.P. Bajoie, the dominant shareholder] and [Reginald Bajoie, his son]. These two reasons have tipped the scales towards this Court's imposition of liability upon OPB and RB individually. As this suit `heated up', OPB and RB abandoned the uninsured (no general liability insurance) [Dixie Shoring Co., Inc.] corporate entity and started operating under a new corporate name, [Dixie Construction Co.]"
In my opinion, our trial brother fell into legal error by giving any decisive weight to these factors in his piercing inquiry. A transfer of assets from one corporation to another does not of itself show that the shareholders disregarded the corporate entity or treated either corporation as an alter ego. Compare Wolff v. Shreveport Electric Light and Power Company, 138 La. 743, 70 So. 789 (1916). Further, because these transfers occurred well after the plaintiffs' action against the original corporation arose, the plaintiffs cannot rely on them to prove that the shareholders had disregarded the corporate entity prior to the corporation's breach of contract.
*1285 Moreover, the trial court clearly and manifestly did not appreciate the full significance of the fact that plaintiffs' action depends upon the existence of a contract in which they knowingly chose to rely solely on the obligation of the corporation without any guarantee by its shareholders. This factor should have been given greater emphasis where, as in this case, the basis of the action to pierce the veil is breach of contract. Where the action underlying the request to pierce the corporate veil is based on contract, courts have usually applied more stringent standards to piercing the corporate veil. See Fletcher Cyc. Corp. § 41.85, at 712, and cases cited therein. The rationale for more carefully scrutinizing these factors is that the party seeking relief in a contract case is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and was aware that he would have to suffer the consequences of limited liability of the shareholders associated with the corporate entity. Id. Accordingly, absent very compelling equitable considerations, courts should not rewrite contracts or disturb the allocation of risk the parties have themselves established. Id., at 713. Plaintiffs in their application for rehearing rely on arguments and authorities that would be more appropriate to a revocatory action to annul the corporation's acts in transferring assets to others. See La.C.C. art. 2036, et seq. Success in such an action would require proof that these transfers, which were made or effected after the plaintiffs' right arose, caused or increased the corporation's insolvency, and would result in a return of the transferred assets inuring to the benefit of all of the corporation's creditors. See La.C.C. art. 2043. Even if plaintiffs had proved all of elements of the revocatory action, it is clear that these elements do not constitute proof of alter ego or neglect of the corporate entity prior to or at the time plaintiffs' action arose. Further, it is equally plain that plaintiffs do not seek to preserve the corporate identity and to return the transferred assets to the corporation, but seek nothing less than to disregard the corporate entity entirely and to hold the shareholders personally liable for the corporate debts.
Finally, the plaintiffs complain that the majority improperly issued a judgment against a corporation which has sought bankruptcy protection. Since the record does not reflect an order from the bankruptcy court allowing proceedings in this suit against the corporation, plaintiffs seem to be correct that the judgment issued illegally in violation of the automatic stay of proceedings under 11 U.S.C. § 362. However, since the corporation is currently without assets, and will probably never be resuscitated, apparently no great harm will be done on this score by allowing the majority opinion and the judgment to stand as written.
For these reasons, the result reached herein is essentially correct and I concur in the denial of rehearing.