United States Court of Appeals
Fifth Circuit

**F I L E D**

November 26, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-30553

CONSORCIO RIVE, S.A. DE C.V.,

Plaintiff- Appellant- Appellee,

VERSUS

BRIGGS OF CANCUN, INC.,

Defendant - Appellant,
and

DAVID BRIGGS ENTERPRISES, INC.,

Defendant-Appellee-Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana

(99-CV-2204)

Before SMITH, DENNIS, and CLEMENT Circuit Judges.

DENNIS, Circuit Judge:[*]

Plaintiff-Appellant Consorcio Rive, S.A. DE C.V. ("Rive") appeals the district court's decisions to dismiss its claims against defendant David Briggs Enterprises, Inc. ("DBE"), and to deny its Rule 60(b) motion. Defendant-Cross Appellant, Briggs of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Cancun, Inc. ("BC"), appeals the district court's judgment enforcing a $2,760,000 arbitration award in favor of Rive and the district court's denial of BC's Rule 60(b) motion. For the reasons discussed herein, we AFFIRM the district court's judgments.

## I.

## Background

BC, a Louisiana corporation, is a subsidiary of DBE, a Louisiana corporation, which is wholly owned and controlled by David A. Briggs, Jr. ("Briggs"). DBE is engaged in the provision of management services, the sale of speciality drink mixes, and the licensing of certain business concepts and systems; it owns several subsidiary organizations that it uses in the provision of these services. DBE organized BC for the purpose of owning and/or operating an establishment selling alcoholic beverages at the retail level. BC in turn contracted with DBE to have DBE provide general administrative and accounting services to BC. BC's accounts are managed through a centralized accounting system maintained by DBE. This accounting system uses individual departmental designations to account separately for the operations of BC and the various other companies for which DBE provides accounting services. In other words, all of the funds of DBE and its subsidiaries are kept in one bank account; however, the funds allocated to each subsidiary are tracked and kept separate for accounting purposes.

On October 1, 1991, Rive, a Mexican corporation, and BC

entered into an agreement (the "Agreement") by which Rive provided property and permits for BC to open a Fat Tuesday's restaurant and bar in Cancun, Mexico. The Agreement included an arbitration clause that stated that any controversy or claim arising out of the Agreement would be settled by arbitration in Monterrey, Mexico, pursuant to the rules of the Interamerican Commercial Arbitration Commission and that judgment upon the award of the arbitrator may be entered in a court having jurisdiction thereof.

Rive initially wanted Briggs and DBE to guarantee the performance of the Agreement by BC. Briggs and DBE rejected this proposal. The parties then freely negotiated a compromise in which DBE and Briggs would not guarantee the performance of the Agreement by BC, but BC would post a bond to guarantee the first six months of its performance.

As a result of a dispute relating to payments due under the Agreement, Rive initiated an arbitration proceeding against BC in January 1996 in Mexico. In February 1996, BC responded, designating an arbitrator. In March 1996, Rive submitted its formal arbitration demand, which BC answered in November 1996. After this point, despite receiving notice of the arbitration proceedings, BC refused to participate in the arbitration proceedings, either in person, through teleconference, or through a representative. The arbitration continued, and the arbitration board awarded Rive a total of $2,760,000 from BC, plus interest and costs.

BC claims that it stopped participating in the arbitration because Rive filed papers requesting a criminal investigation of Briggs, among others, for criminal conspiracy to prevent Rive from exercising its rights under the Agreement.  This investigation made Briggs afraid to enter Mexico and subject himself to arrest.  No arrest warrant appears to have been issued against Briggs as a result of this action.  Neither DBE nor BC was involved in this criminal investigation.

On July 19, 1999, Rive filed suit in federal court for enforcement of the arbitration award pursuant to the Convention and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 201, against BC and DBE.  The district court held that the award should be enforced against BC. But the court dismissed DBE from the case after refusing to pierce BC's corporate veil.  BC appeals the district court's enforcement of the arbitration award against it.  Rive appeals the district court's decision to dismiss DBE from the case.

II

Standard of Review

"We review a judgment on the merits of a nonjury civil case applying the usual standards of review.  Thus, we review conclusions of law *de novo* and findings of fact for clear error." *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995) (internal citations omitted). Accordingly, "[i]f the district

4

court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently." *Id.* (internal citations omitted). Finally, "a trial court's finding is 'clearly erroneous' when, although there is evidence to support the finding, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* (internal citations omitted).

The district court's decision to grant or deny relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure lies in the sound discretion of the district court and will be reversed only for an abuse of that discretion. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir. 2001).

Although we apply Louisiana substantive law to determine the appropriateness of piercing the corporate veil, we utilize our own federal standards of appellate review in evaluating the district court's decision. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646-47, 647 n.12 (5th Cir. 2002). The decision of whether to pierce the corporate veil presents a mixed question of law and fact. To the extent that the district court's decision not to pierce the corporate veil involves a factual determination, we review it for clear error; to the extent that it involves questions of law, we review those questions of law *de novo*. *See id.* at 647; *Hollowell v. Orleans Regional Hospital, LLC*, 217 F.3d 379, 385 (5th

Cir. 2000).

### III

### Enforcement of Arbitration Award

BC alleges that the district court made several procedural and substantive errors in finding that BC was responsible for the arbitration award. Specifically, BC argues that the district court erred (1) by not permitting it to argue all of its affirmative defenses at trial; (2) by not holding that termination of the Agreement removed the obligation on the parties to arbitrate; (3) by enforcing the arbitration award contrary to the public policy of the United States; and (4) by not holding that the Mexican criminal proceedings initiated against Briggs prevented BC from presenting its case to the arbitrator.[2]  Upon reviewing these arguments, we disagree and affirm the decision of the district court.

### A

BC argues that the district court committed reversible error by not permitting it to argue all of the affirmative defenses that it attempted to raise in opposition to enforcement of the arbitration award at trial.  The Convention, however, establishes what defenses a defendant may raise to enforcement of a foreign arbitration.  Specifically, under Article V of the Convention, only certain enumerated defenses may be raised in opposition to

---

[2]BC and DBE also argue that the district court erred in requiring BC and DBE to post a bond to stay the proceedings pending the resolution of certain Mexican judicial proceedings.  However, because BC and DBE did not actually post a bond, the issue is moot.

6

"[r]ecognition and enforcement of the [arbitration] award." 9 U.S.C. § 201. BC and DBE did not raise any of these defenses to the district court and do not raise them to this court. Instead, BC and DBE only present defenses on issues that should have been raised during the arbitration itself. Because the affirmative defenses that BC and DBE attempted to raise in the district court are not cognizable under the Convention, the district court properly refused to allow these defenses at trial.[3]

B

Defendants next contend that when the Agreement terminated, the parties' obligation to arbitrate their dispute terminated. Defendants argue, therefore, that the district court erred in enforcing the result of the arbitration. The Supreme Court has rejected this argument and has held expressly that an arbitration agreement contained in a contract does not terminate merely because the contract has terminated. *See Nolde Bros. v. Bakery & Confectionary Workers Union*, 430 U.S. 243, 249-55 (1977) ("[I]t

---

[3]In addition to BC and DBE's general complaint that the district court improperly denied them an opportunity to argue affirmative defenses to enforcement of the arbitration award, BC and DBE also make separate claims concerning the affirmative defenses of setoff and waiver. Specifically, BC and DBE claim that the arbitrator's award should be reduced by $900,000 because of a $900,000 payment that Rive received from another party involved in the dispute and because Rive waived its right to arbitrate the dispute by filing papers requesting a criminal investigation of Briggs. Because setoff and waiver are affirmative defenses to enforcement of the award that are not listed in Article V of the Convention, the district court properly rejected these claims for the reasons explained above.

could not seriously be contended . . . that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum."). Accordingly, we reject defendants' argument.

C

Defendants also argue that the district court's enforcement of the arbitration award is contrary to the public policy of the United States because Rive used the Mexican criminal matter as a tool of "intimidation and extortion" against BC and DBE. The Convention allows a court to deny enforcement of a foreign arbitration award if "the recognition or enforcement of the award would be contrary to the public policy of that [court's] country." 9 U.S.C. § 201 (Convention Article V(2)(b)). However, courts construe this public policy defense narrowly and only apply it when enforcement of the foreign arbitration award would violate the forum state's most basic notions of morality and justice. *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2nd Cir. 1975). Additionally, it is not uncommon in the United States for criminal and civil proceedings involving the same matter to run concurrently. *See Witter v. Immigration and Naturalization Service*, 113 F.3d 549, 555 (5th Cir. 1997) (holding that the "difficult litigation choices" that may result from a party's being involved in concurrent civil and criminal proceedings "do not substantially infringe Fifth Amendment rights"). Simply put, the

8

district court correctly held that enforcing the arbitration award, even considering that Mexican criminal proceedings were instituted, does not violate our most basic notions of morality and justice and does not preclude the courts from enforcing the award.[4]

D

Defendants also contend that the Mexican criminal proceedings initiated against Briggs prevented BC from presenting its case to the arbitrator.  Specifically, defendants argue that Briggs was precluded, through fear of arrest, from entering Mexico to participate in the arbitration.  Hence, it concludes, the district court erred in enforcing the foreign arbitration award.

Article V(1)(b) of the Convention does state that a foreign arbitration award need not be enforced where a party lacked notice of the arbitration or was "otherwise unable to present his case." 9 U.S.C. § 201.[5]  However, as the district court explained, the strong federal policy in support of encouraging arbitration and enforcing arbitration awards dictates that we narrowly construe the

---

[4]Additionally, BC and DBE argue that the district court improperly considered the testimony of Rive's Mexican counsel regarding the Mexican criminal procedures.  We need not address this issue because, even if the testimony should not have been considered, its admission is harmless error.  Even without the benefit of the specific testimony concerning the Mexican criminal procedures, the district court correctly decided that the institution of those procedures did not violate public policy.

[5]There is no contention that BC and DBE had insufficient notice of the arbitration proceedings.

defense that a party was "unable to present its case." *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'industrie du Papier*, 508 F.2d 969, 975 (2nd Cir. 1974).

In this case, the district court correctly found that BC had ample opportunity to present its case to the arbitrator. BC could have participated in the arbitration by means other than David Briggs' physical presence at the arbitration. BC could have simply sent an attorney or other corporate representative to represent it at the arbitration. Briggs himself could have participated by telephone. Additionally, BC participated in the arbitration to the extent that it designated an arbitrator and filed over 80 pages of legal argument and documentation in support of its position at arbitration. Defendants did not present the district court with any additional information or evidence that BC would have presented at the arbitration had it had the opportunity to do so. Accordingly, the district court properly rejected the argument that BC did not have the opportunity to participate meaningfully in the arbitration.

In conclusion, though defendants raise multiple arguments contending that the district court improperly enforced the Mexican arbitration award, these arguments all lack validity. Accordingly, we affirm the district court's decision to enforce the arbitration award against BC.

IV

Piercing the Corporate Veil

Rive's appeal challenges the district court's decision not to pierce BC's corporate veil and enforce Rive's arbitration award against DBE. Instead, the district court entered judgment enforcing the award against BC, but not allowing Rive to reach the assets of DBE in collecting on that judgment.

"A corporation is a distinct legal entity from those persons who compose it." *Sparks v. Progressive American Insurance Co.*, 517 So. 2d 1036, 1039 (La. App. 3 Cir. 1987); *see also* La.R.S. 12:93(B) ("A shareholder of a corporation organized after January 1, 1929, shall not be liable personally for any debt or liability of the corporation."); *Middleton v. Parish of Jefferson*, 707 So. 2d 454, 456 (La. App. 5 Cir. 1998) ("The general rule that corporations are distinct legal entities is well supported by jurisprudence and statute."). Piercing the corporate veil in Louisiana in order to impose the corporation's liability on the corporation's owners is a "radical remedy" and must of course be construed very narrowly and exercised in "exceptional circumstances." *Sparks,* 517 So.2d at 1039. "Although [veil piercing] usually arise[s] to impose personal liability on corporate shareholders for corporate debts, this is a flexible doctrine that can be used in any situation in which the separate personality of the corporation appears to be blocking a just result." *Middleton*, 707 So.2d at 456. Additionally,

> the policies behind recognition of a separate corporate existence must be balanced against the policies justifying piercing . . . . Depending upon the various competing policies and interests involved, the same factual scenario may result in recognition of a separate corporate identity for some purposes, i.e. insulation of shareholders from liability, and a disallowance of the separate corporate entity privilege for others. Each situation must be considered by the court on its merits. The facts presented must demonstrate some misuse of the corporate privilege in that situation or the need of limiting it in order to do justice.

*Glazer v. The Commission on Ethics*, 431 So. 2d 752, 757-58 (La. 1983) (internal citations omitted).

Balancing these equities, Louisiana courts have recognized that corporate liabilities that result from consensual contractual relationships between sophisticated parties dealing at arms length should only be attributed to the corporate shareholders in extreme situations. Specifically,

> Where the action underlying the request to pierce the corporate veil is based on contract, courts have usually applied more stringent standards to piercing the corporate veil. The rationale for more carefully scrutinizing these factors is that the party seeking relief in a contract case is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity and was aware that he would have to suffer the consequences of limited liability of the shareholders associated with the corporate entity. Accordingly, absent very compelling equitable considerations, courts should not rewrite contracts or disturb the allocation of risk the parties have themselves established.

12

*Riggins v. Dixie Shoring Co.*, 592 So.2d 1282, 1285 (La. 1992) (Dennis, J., concurring) (internal citations omitted); *see also Barnco International, Inc. v. Arkla, Inc.* 684 So.2d 986, 992 (La. App. 2 Cir. 1996) (citing *Riggins* and noting that "the courts have usually applied a more stringent standard where the party seeking to pierce the veil, in a contract case, voluntarily entered into an agreement with a corporate entity and knowingly accepted the consequences of limited liability").

While the above cited cases provide us with insight into the general approach that the Louisiana courts take to piercing the corporate veil, we also need to determine what particular factors, if any, the Louisiana courts examine in determining whether the corporate veil should be pierced in any specific case. Professor Glenn Morris has performed an in-depth analysis of all Louisiana veil piercing cases between 1944 and 1991. *See* Glenn G. Morris, *Piercing the Corporate Veil in Louisiana*, 52 La.L.Rev. 271, 273 (1991). His analysis provides insight into how Louisiana courts analyze piercing the corporate veil in consensual creditor cases. Notably, he comments that "[o]f the many dozens of reported veil-piercing cases covered by this article, not one of them involving a claim by a consensual creditor has pierced the veil simply because the obligor corporation was a controlled shell or instrumentality." *Id.* at 292. Instead, other factors must be present in order to hold that the corporate veil should be pierced

13

in a consensual creditor case. *Id.*

Specifically, Louisiana courts must find one of the following four factors before they will pierce the corporate veil in favor of a consensual creditor: (1) the creditor is less sophisticated than the corporation; (2) a single shareholder controls a number of different corporations and moves assets back and forth among the various corporations; (3) the shareholder has deliberately stripped the corporation of assets, knowing that the corporation is about to face liability, or has placed the contract into the shell corporation knowing that the contract was going to be breached; or (4) an extension of credit to the corporation has been procured, at least in part, as the result of some false representation made personally by the defendant shareholder or officer. *Id.* at 293-94 (citing, *inter alia*, *Troyer v. Webster Homes, Inc.*, 566 So. 2d 114 (La. App. 5 Cir. 1990); *Terry v. Guillory*, 538 So.2d 317 (La. App. 3 Cir. 1989); *George A. Hormel & Co. v. Ford*, 486 So. 2d 927 (La. App. 5 Cir. 1986); *Entech Systems Corp. v. Gaffney*, 466 So.2d 788 (La. App. 4 Cir. 1985)).

Rive argues that these four factors are not applicable to the analysis of piercing the corporate veil in this case and that we should instead apply an eighteen factor test that the Louisiana Court of Appeal enumerated in *Green v. Champion Insurance Co.*, 577

14

So.2d 249 (La.App.1991).[6] Technically, *Green* did not involve piercing the corporate veil in order to impose a corporation's liability onto its shareholders. Instead, *Green* enumerated a non-exhaustive, non-dispositive list of factors to determine whether a group of related companies is a "single business enterprise." *Id.* at 258. The district court heard extensive testimony on these *Green* factors from both parties and specifically found that the defendant's expert testimony on these factors was more credible. The district court then analyzed these factors and found that BC and DBE did not constitute a "single business enterprise." We agree with the district court's legal analysis and findings of fact. To the extent that the *Green* factors apply to this case, we affirm the district court's refusal to use the *Green* factors to

---

[6]The eighteen factors are "(1) Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of the corporation; (5) corporation financing another corporation; (6) inadequate capitalization ('thin incorporation'); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations." *Green*, 577 So.2d at 257-58.

15

find that BC and DBE were a single business enterprise.

We must next look at the four "piercing the corporate veil" factors listed above to determine whether the district court properly refused to impose liability on DBE via that theory. Examining these four factors in turn, the district court found that none of these factors applied to this situation. First, the court explained that both Rive and BC are very sophisticated business entities. Second, the court found, based on the testimony of the accountants at trial, that all of the money in the Briggs family of companies was adequately tracked among the various companies. The money was not, as would be required to pierce the veil, transferred among the companies in such a manner as to make it impossible to track. Third, the court noted that, far from being a shell corporation, BC is still an ongoing profitable business. Finally, the court noted that there is no evidence in the record to demonstrate that BC, DBE, or Briggs engaged in fraud or deceit in entering into the Agreement with Rive. Accordingly, the district court found that none of the four factors were met and did not allow Rive to pierce BC's corporate veil and enforce the arbitration award against DBE. To the extent that the district court's determination involved findings of fact, we hold that the district court did not clearly err in making those findings. To the extent that the district court's determination involved an

interpretation of law, it correctly interpreted the law.[7]

V

Rule 60(b) Motions

Both sides appeal the district court's denial of their Rule 60(b) motions made after the conclusion of the trial. Rule 60(b) allows the district court to relieve a party from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied or relies on a law invalidated subsequent to entry of the judgment; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b). As explained above, we review the district court's decision to grant or deny a Rule 60(b) motion for abuse of discretion. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir. 2001). Rule 60(b) is an "extraordinary" remedy; courts are disinclined to disturb final judgments except when necessary. *See*

---

[7]In addition to the analysis above, it is also notable that Rive initially wanted DBE to assume liability under the Agreement. DBE expressly refused, and the parties negotiated for and agreed to a risk allocation arrangement in which DBE did not have liability under the Agreement. For the district court to invalidate this term of the Agreement and impose the extraordinary remedy of corporate veil piercing on BC would directly conflict with Louisiana law to the contrary. *Barnco*, 684 So.2d at 992 ("[Louisiana] courts have usually applied a more stringent standard where the party seeking to pierce the veil, in a contract case, voluntarily entered into an agreement with a corporate entity and knowingly accepted the consequences of limited liability").

17

*Goldstein v. MCI Worldcom*, 340 F.3d 248, 258 (5th Cir. 2003) (citing *Pease v. Pakohed,* 980 F.2d 995, 998 (5th Cir. 1993) and *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992)).

Rive claims that BC made several misrepresentations during the proceedings that obligate the district court to relieve Rive from its decision not to pierce BC's corporate veil.[8]  Specifically, Rive contends that (1) several post-judgment actions by BC and DBE indicated that they made misrepresentations at trial; (2) DBE lied about how much revenue it received from the Fat Tuesday's; and (3) BC lied about being a "successful" business.  We have reviewed these arguments and uphold the decision of the district court.

First, Rive argues that BC and DBE took post-judgment actions, such as opening a separate bank account for BC and making payments by DBE on behalf of BC, that indicate that BC's and DBE's testimony at trial were misrepresentations that necessitate Rule 60(b) interference with enforcement of the judgment.  We hold that the district court did not abuse its discretion in holding that these post-judgment actions by BC and DBE did not implicate the extraordinary Rule 60(b) remedy of undercutting the judgment.  Rive also contends that defendant's claim that DBE only received 5% of

---

[8]To the extent that elements of Rive's 60(b) motion relate to alleged misconduct by BC involving enforcement of the arbitration award against BC, we do not address the issue because it is moot. The district court ruled in favor of Rive concerning enforcement of the arbitration award against BC.

the gross revenue generated by the Fat Tuesday's from BC must be false because the new company managing the Fat Tuesday's is paying 15% in fees. The district court properly held that defendants did not prove that BC was paying more than 5% to DBE. Finally, Rive contends that BC lied about being a "successful" company. However, BC is a profitable company and "success" is a relative term. It was not an abuse of discretion for the district court to hold that it was not a misrepresentation to claim that BC was successful. In short, the district court properly denied Rive's Rule 60(b) motion.

BC also brought a Rule 60(b) motion, contending that a Mexican appeals court held that the Mexican district court's decision was improper. Therefore, BC argues, the district court in this case should have set aside its judgment enforcing the Mexican arbitration award. BC, however, had an opportunity to post a bond and stay these proceedings pending the resolution of the Mexican appellate proceedings. BC did not post this bond. It was not an abuse of discretion for the district court to refuse to use Rule 60(b) in this instance to undercut its judgment.

## VI

### Conclusion

After reviewing the record and the arguments by both parties in this case, we affirm the judgment of the district court. BC raises numerous arguments in opposition to enforcement of the Mexican arbitration award against it in favor of Rive. None of the

19

arguments survive scrutiny. Rive objects to the district court's dismissal of DBE from this case. However, this dismissal was proper because DBE is not responsible for BC's corporate liability. Finally, both parties appeal the denial of their Rule 60(b) motions. Both motions were properly denied.

AFFIRMED