[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 4, 2004
THOMAS K. KAHN
CLERK

No. 03-10518

D. C. Docket No. 01-01449 CV-T-23-TBM

CZARINA, L.L.C., as assignee
of Halvanon Insurance Co. Ltd.,

Plaintiff-Appellant,

versus

W.F. POE SYNDICATE,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Middle District of Florida

—————————————

**(February 4, 2004)**

Before BLACK, HULL and COX, Circuit Judges.

COX, Circuit Judge:

## I.  INTRODUCTION

Plaintiff Czarina, L.L.C., as assignee of Halvanon Insurance Co. Ltd., appeals the district court's denial of its application to confirm a foreign arbitration award. The district court denied Czarina's application, concluding that it did not have subject matter jurisdiction to confirm the award.  *Czarina, L.L.C. ex rel. Halvanon Ins. Co. Ltd. v. W.F. Poe Syndicate*, 254 F. Supp. 2d 1229 (M.D. Fla. 2002).  We affirm.

## II.  BACKGROUND AND PROCEDURAL HISTORY

Halvanon Insurance Company was an Israeli company.  In 1984, Halvanon entered into an agreement with Defendant W. F. Poe Syndicate, a Florida reinsurance company and member of the Miami-based Insurance Exchange of the Americas ("IEA"), by the terms of which Poe and other IEA members agreed to reinsure some of Halvanon's risks.  As was common in the IEA's reinsurance business, Halvanon and Poe agreed for Poe to reinsure Halvanon before specifying all the details of the agreement.  They agreed that their lead underwriters would come together later and flesh out the agreement by drafting a "wording," or written contract, but their underwriters never did.  Nonetheless, Halvanon later took the position that Poe was indebted to it under this reinsurance agreement.

In 1985, Halvanon became insolvent and was liquidated. In the liquidation, Czarina purchased some of Halvanon's accounts receivable, including the Poe account. After Poe refused to pay Czarina on that account, Czarina initiated an arbitration in London to collect the alleged indebtedness. Before the arbitrators, Czarina asserted that arbitration was the proper forum for deciding its dispute with Poe based on the following four items:

(1) a form dated December 22, 1983, sent by the IEA's broker to Halvanon's broker, stating that an IEA member would reinsure Halvanon, and that the terms of the reinsurance agreement would be negotiated with Halvanon later by the IEA's lead underwriter;

(2) a form dated February 1, 1984, from Halvanon's broker to Halvanon stating that twenty percent of Halvanon's business would be reinsured by IEA members;

(3) a "Confirmation of Cover" form, dated March 8, 1984, signed by Poe and other IEA members, confirming reinsurance coverage to Halvanon; and

(4) an unsigned, unexecuted sample wording, drafted in 1982, which Halvanon used in 1982 in its reinsurance relationships.

None of the first three forms, which were sent between Halvanon, its broker, Poe, and the IEA's broker, contained any reference to arbitration. Only the fourth item, the 1982 Sample Wording, included an arbitration clause; it provided for arbitration before a two-member panel in London. The 1982 Sample Wording was simply a sample: it was not drafted for the Halvanon-Poe transaction.

Poe's defense in the arbitration consisted of two short letters to the arbitration panel. Both letters began with the unequivocal assertion that Poe had never agreed to arbitrate this dispute. Specifically, Poe pointed out that it neither agreed to nor signed the 1982 Sample Wording. The letters also included various reasons why Poe should prevail on the merits of the dispute. Nevertheless, the arbitration panel concluded that Poe had agreed to submit to arbitration, and awarded Czarina over £150,000. The panel's award noted that Poe's position was that it never submitted this dispute to arbitration.

Czarina filed this award-confirmation action in the district court, invoking the court's jurisdiction pursuant to article two of the Federal Arbitration Act, 9 U.S.C. §§ 201-208.[1] The court conducted a three-day bench trial on the issue of whether Halvanon and Poe had agreed to arbitrate, a question the court held was dispositive

---

[1]Czarina also invoked the court's diversity jurisdiction under 28 U.S.C. § 1332, but on appeal has apparently abandoned diversity as a basis for jurisdiction.

of its own subject matter jurisdiction in the confirmation action. The court found that there had been no agreement to arbitrate, and based on this, dismissed for lack of subject matter jurisdiction Czarina's application to confirm the award. Czarina appeals this judgment.

## III. CONTENTIONS OF THE PARTIES AND STANDARD OF REVIEW

Czarina contends that the district court erred in denying for lack of subject matter jurisdiction its application. Specifically, it contends that the court erred in holding that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) (hereinafter the Convention), requires a party invoking a federal court's jurisdiction to confirm an award falling under the Convention to establish that the award was entered pursuant to a written arbitration agreement, signed by the parties. Alternatively, Czarina contends that even if it had to present a written, signed arbitration agreement, it satisfied this requirement by providing the unsigned 1982 Sample Wording which the arbitration panel found Halvanon and Poe had agreed to. Czarina contends that the district court was bound to accept this finding by the panel, and thus erred by not accepting it and taking jurisdiction. As a second alternative, Czarina contends that it need not have met the signed-and-written-agreement requirement because Poe waived any objection to the arbitrability of the dispute by

5

defending the arbitration on the merits. Thus, Czarina contends, the requirement was no bar to the court's jurisdiction in this confirmation action. Poe contends that the district court properly concluded that it lacked subject matter jurisdiction because Czarina failed to comply with the requirements of the Convention.

These contentions present questions of law, which we review de novo. *Newell v. Prudential Ins. Co. of Am.*, 904 F.2d 644, 649 (11th Cir. 1990).

## IV.  DISCUSSION

### A.  Does the Convention, as Incorporated into the Federal Arbitration Act, Require a Party Requesting a Federal District Court to Confirm a Foreign Arbitration Award to Comply with Article II's Agreement-in-Writing Requirement to Establish the Court's Jurisdiction?

Czarina first contends that the Convention does not require the proponent of an arbitration award to meet Article II's agreement-in-writing requirement with the court for the court to have subject matter jurisdiction over the confirmation action. We disagree.

Article 2 of the Federal Arbitration Act ("FAA") provides for enforcement of foreign arbitration agreements and awards, and to these ends, it ratifies and incorporates the Convention. 9 U.S.C. § 201 (historical and statutory notes). Under the FAA, federal district courts have original jurisdiction over actions "falling under

6

the Convention." 9 U.S.C. § 203.[2]  The FAA provides two causes of action in federal district court for enforcing arbitration agreements falling under the Convention: an action to compel arbitration pursuant to an arbitration agreement falling under the Convention, 9 U.S.C. § 206, and an action to confirm an arbitration award made pursuant to an agreement falling under the Convention, 9 U.S.C. § 207.

To determine whether an award falls under the Convention, and thus, whether the district court has jurisdiction over the action to compel arbitration or to confirm an award, courts look to the language of the Convention.  *See Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999).  The Convention imposes prerequisites to both types of actions.  Article II of the Convention imposes a prerequisite on a party asking the court to compel arbitration: it requires that the party bring the court the written agreement.  Convention, *supra*, art. II, 9 U.S.C. § 201 (historical and statutory notes).  Articles III and IV govern actions to confirm an arbitration award.  Article III provides:

> Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory

---

[2]"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.

7

where the award is relied upon, *under the conditions laid down in the following articles*.

*Id.* at art. III (emphasis added). Article IV imposes two conditions:

To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:
(a) The duly authenticated original award or a duly certified copy thereof;
(b) The original agreement referred to in article II or a duly certified copy thereof.

*Id.* at art. IV, sec. 1.

Both articles II and IV explicitly refer to article II's definition of an arbitration agreement in writing. That definition reads: "[t]he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Id.* at art. II, sec. 2.

Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction. *See, e.g., Kahn*, 186 F.3d at 218 (reversing order compelling arbitration under the Convention, and dismissing motion to compel arbitration with prejudice, for lack of subject matter jurisdiction, where the written purchase orders containing the arbitration clause had not been signed by both parties); *Lo v. Aetna Int'l, Inc.*, No. 3:99CV195 JBA, 2000 WL 565465, *4 (D. Conn. Mar. 29, 2000) ("Since Aetna has shown no written agreement to arbitrate these

8

claims signed by Ms. Lo in her capacity as beneficiary, the Court concludes it lacks subject matter jurisdiction to compel arbitration under the New York Convention . . . .").  And, when enforcing an agreement or confirming an award, courts first assure themselves of their jurisdiction by deciding whether the agreement-in-writing requirement has been met.  *See, e.g., Sphere Drake,* 16 F.3d at 669 (affirming district court's judgment compelling arbitration under the Convention, but only after resolving the jurisdictional issue of whether the plaintiff had presented an agreement in writing); *Consorcio Rive, S.A. de C.V. v. Briggs of Cancun, Inc.*, 134 F. Supp. 2d 789, 794 (E.D. La. 2001) ("There is no dispute in this matter that the arbitral award and the relevant agreements between Rive and Briggs of Cancun have been supplied to the Court.  . . . Thus, under the terms of the Convention and the enabling federal statute, this Court has the authority to recognize and enforce the arbitral award at issue in this matter."), *aff'd, Rive v. Briggs of Cancun, Inc.*, 82 Fed. Appx. 359 (5th Cir. 2003); *Coutinho Caro & Co. U.S.A. v. Marcus Trading, Inc.*, Nos. 3:95CV2362(AWT), 3:96CV2218(AWT), 3:96CV2219(AWT), 2000 WL 435566, *10 (D. Conn. Mar. 14, 2000) (granting a petition to confirm a foreign arbitration under the Convention, after concluding, inter alia, that the party seeking confirmation had met "the jurisdictional requirement of Article IV(1)(b) for obtaining recognition and enforcement of an arbitral award, i.e., that the court be furnished with the

9

'agreement in writing' contemplated by Article II."). *Accord Geotech Lizenz AG v. Evergreen Sys., Inc.*, 697 F. Supp. 1248, 1252 (E.D.N.Y. 1988) (noting first that the plaintiff had satisfied article IV's requirements, before turning to the defendant's objections to confirming the award).

The FAA provides:

[A]ny party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award [falling under the Convention] as against any other party to the arbitration. The court shall confirm the award *unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.*

9 U.S.C. § 207 (emphasis added). The failure of a party to satisfy article IV's requirements qualifies as one of the "grounds for refusal or deferral . . . specified in the said Convention," *id.*, because the Convention uses mandatory language in establishing the prerequisites: "[t]o obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement *shall, at the time of the application, supply*" a copy of the award and the arbitration agreement, Convention, *supra*, art. IV, sec. 1, 9 U.S.C. § 201 (historical and statutory notes) (emphasis added). This mandatory language also indicates that without these requirements being satisfied, the court is without power to confirm an award. Thus, we hold that the party seeking confirmation of an award falling under the Convention

must meet article IV's prerequisites to establish the district court's subject matter jurisdiction to confirm the award[3].

## B. In Deciding Whether Czarina Had Met the Jurisdictional Prerequisites to a Confirmation Action, Was the District Court Bound by the Arbitration Panel's Determination that the Parties Agreed to Arbitrate the Dispute?

As an alternative to its first contention, Czarina argues that it satisfied the agreement-in-writing requirement by attaching the 1982 Sample Wording to its pleadings in this case. Czarina does not contend that the 1982 Sample Wording alone

---

[3]We must note that the jurisdictional prerequisites to an action confirming an award are different from the several affirmative defenses to confirmation enumerated in article V of the Convention. Once the proponent of the award meets his article IV jurisdictional burden of providing a certified copy of the award and the arbitration agreement, he establishes a prima facie case for confirmation of the award. *See* Leonard Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049, 1066 (1961) ("The proponent of the award is required only to supply the original or a certified copy of the award and the arbitral agreement. These establish a prima facie case, and the burden shifts to the defendant to establish the invalidity of the award on one of the grounds specified in Article V 1."). That is, the award is presumed to be confirmable. The defendant to the confirmation action can overcome this presumption only by making one of the showings enumerated in the Convention. Convention, *supra*, art. V, 9 U.S.C. § 201 (historical and statutory notes) ("Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that" one of the seven enumerated defenses applies); *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446 (11th Cir. 1998) (holding "that no defense against enforcement of an international arbitral award under Chapter 2 of the FAA is available on the ground that the award is 'arbitrary and capricious,' or on any other grounds not specified by the Convention," as "the Convention's enumeration of defenses is exclusive"). As the Convention language indicates, the burden of proving these affirmative defenses rests on the defendant, Convention, *supra*, art. V, 9 U.S.C. § 201 (historical and statutory notes), while the burden of establishing the jurisdictional prerequisites rests on the proponent of the award, *id*. at art. IV, sec. 1. *See also Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976) (noting that the burden of proving an article V affirmative defense is on the party defending against enforcement of the award).

11

met the agreement-in-writing requirement. Instead, it contends that the district court was bound to accept the panel's finding that Halvanon and Poe had agreed to the 1982 Sample Wording, and thus that the Wording, plus the finding, satisfied the requirement. We disagree with this contention because accepting it would eviscerate an important principle of United States and international arbitration law.

Recently, the Third Circuit, in *China Minmetals Materials Import and Export Co. v. Chi Mei Corp.*, 334 F.3d 274 (3d Cir. 2003), explained that under United States law and international law, a court asked to confirm an award should review an arbitration panel's conclusion that the parties agreed to arbitrate, unless the parties have agreed to submit this question to the arbitration panel. *Id.* at 281, 287-89 (holding that a party defending against an action to confirm an award falling under the Convention can raise the lack of an arbitration agreement as a defense, even though it is not one of the defenses enumerated in article V). *China Minmetals* noted the United States rule, announced in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923-24 (1995), that under the FAA, the district court must decide the question of arbitrability unless the parties have clearly and unmistakably agreed to submit this question to an arbitrator. *China Minmetals*, 334 F.3d at 281. And, *China Minmetals* noted that the laws of England, France, Germany, and the United Nations similarly provide for judicial review of arbitrability where one

12

party contends that no valid arbitration agreement exists. *Id.* at 287-89. This principle of arbitration exists because arbitration is a creature of contract, and thus the powers of an arbitrator extend only as far as the parties have agreed they will extend. *Id.* at 281, 289 (citing *First Options*, 514 U.S. at 943, 115 S. Ct. at 1924).

Here, following an evidentiary hearing on whether the jurisdictional prerequisites of article IV had been met, the district court concluded that Czarina failed to establish that Halvanon and Poe had agreed to arbitrate. *Czarina*, 254 F. Supp. 2d at 1234. This necessarily means that Czarina failed to show that they had agreed to arbitrate arbitrability. Therefore, we conclude that the district court properly enforced article IV's prerequisites and properly refused to accept at face value the arbitration panel's finding that Halvanon and Poe agreed to the 1982 Sample Wording.

### C. Was Czarina Relieved of Its Burden to Establish the Article IV Jurisdictional Prerequisites by Poe's Arguing the Merits of Arbitration to the Arbitration Panel?

As a second alternative to its first two contentions, Czarina contends that it did not have to meet the article IV prerequisites because Poe argued the merits of the dispute to the arbitrators. Czarina relies on two award-confirmation cases which have bypassed article IV's requirements, because the parties had proceeded in the arbitrations without sufficiently contesting the arbitrators' jurisdiction. *See Slaney*

13

*v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 591 (7th Cir. 2001) (declining to decide whether the proponent of the award had met the agreement-in-writing requirement, as the defendant had "freely participated" in the arbitration); *Al Haddad Bros. Enters., Inc., v. M/S Agapi*, 635 F. Supp. 205, 209 (D. Del. 1986) (refusing to examine arbitrability, as "plaintiff did not raise the lack-of-arbitration-provision argument until March 20, 1984–nearly a year after Sahib Al Haddad started on the case and sixteen months after this Court originally stayed this litigation to allow arbitration").

Unlike the parties in those cases, Poe objected early and often, consistently maintaining that it had never agreed to arbitrate this dispute. The district court found this to be a fact, *Czarina*, 254 F. Supp. 2d at 1232, and Czarina does not contend that this finding was clearly erroneous. Czarina has presented no legal authority dictating that, under these facts, the district court should have concluded that Poe waived its objections to the panel's jurisdiction.[4] Thus, we cannot conclude that the district court erred when it rejected Czarina's waiver arguments, instead requiring Czarina to establish subject matter jurisdiction by meeting the requirements of article IV of

---

[4]Czarina argues that the district court erred by not applying English law, which Czarina says would have required the court to conclude that Poe had waived its objection to the arbitrators' jurisdiction. But Czarina provides no authority for why the district court was bound to apply English law when deciding the question of its subject matter jurisdiction pursuant to article IV.

14

the Convention. *Cf. China Minmetals*, 334 F.3d at 290-92 (holding that under either federal or state law, a party "did not waive its objection to [the arbitrator's] jurisdiction inasmuch as it participated in the arbitration primarily to argue the forgery/jurisdiction issue and consistently objected to [the arbitrator's] jurisdiction throughout the proceedings."); *see also First Options*, 514 U.S. at 946, 115 S. Ct. at 1925 (concluding that arguing arbitrability to an arbitrator does not indicate a willingness to be bound by the arbitrator's decision on that issue).

## V.  CONCLUSION

Because Czarina failed to satisfy the requirements of article IV of the Convention, the district court's judgment denying for lack of subject matter jurisdiction Czarina's application for an order confirming the arbitration award is affirmed.

AFFIRMED.