# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2313
_____

AVR Communications, Ltd., an Israeli corporation; Sonovation, Inc., a Minnesota corporation

*Petitioners - Appellees*

v.

American Hearing Systems, Inc., doing business as Interton, Inc., a Minnesota corporation

*Respondent - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2015
Filed: July 14, 2015

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

American Hearing Systems, Inc., doing business as Interton, Inc. (Interton), challenges an order of the district court[1] granting the petition of AVR Communications, Ltd. (AVR) to confirm a foreign arbitration award under the

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention), June 10, 1958, 21 U.S.T. 2517, implemented at 9 U.S.C. §§ 201-208. We affirm.

I

AVR is an Israeli corporation based in Israel. Interton is a Minnesota corporation based in Minnesota. Both companies are in the business of producing and selling hearing aids and hearing aid technology. In 2004, the two companies entered into a written Investment Agreement which gave Interton a seat on AVR's Board of Directors as well as a twenty percent interest in AVR. During the negotiations that led to the Investment Agreement, the contemplated business relationship between the parties included discussions of these two aspects: (1) integrating AVR's DFC technology into Interton's products, and (2) Interton's purchase of AVR's W.C. components for use in wireless FM Cross products. As part of the Investment Agreement, Interton paid $412,000 to AVR dedicated to research and development projects for wireless FM communications and digital signal processing. The Investment Agreement stated it was "[t]he parties' intention . . . that Interton will acquire from [AVR] products deriving from such R & D projects." Appendix at 19. According to AVR, the R & D projects referred to in the Investment Agreement included the DFC technology and the W.C. components.

The Investment Agreement also incorporated by reference certain terms from a Stock Purchase Agreement that AVR had previously signed with other investors. Significantly, two of the incorporated provisions were a "Governing Law" provision as well as an "Arbitration" provision. Both of the incorporated provisions indicated the Investment Agreement would be governed by and construed in accordance with the laws of the State of Israel. In addition, the Arbitration provision stated as follows:

Any dispute between the parties ***relating to (or arising out of) the provisions of this Agreement*** or any of its Exhibits will be referred exclusively to the decision of a single arbitrator appointed by mutual consent, and failing such consent within 10 days from the date on which an affected party first requested arbitration - the Arbitrator will be appointed by the President of the Israel Bar Association. The Arbitrator will be bound by Israeli substantive law but will not be bound by the rules of evidence or the rules of civil procedure. The Arbitrator will be required to provide the grounds for his ruling in writing.

The competent court will have such supplementary jurisdiction for all issues arising and/or relating to the Arbitration as is provided by the Arbitration Law of 1968, and/or may be necessary to resolve such dispute.

Id. at 64 (emphasis added).

Subsequent to signing the Investment Agreement, various disputes arose between the parties which included disputes about Interton's purchase of W.C. components and the integration of DFC technology into Interton's products. In March 2007, AVR commenced an arbitration proceeding in Israel against Interton asserting a number of claims relating to the Investment Agreement, including claims concerning the integration of the DFC technology and the purchase of W.C. components.

Interton retained counsel and participated in the Israeli arbitration, but had a more limited view of the scope of the arbitration than did AVR. Interton believed the disputes over the integration of the DFC technology and the purchase of W.C. components were separate and apart from the other disputes involving the Investment Agreement, and therefore were not subject to the incorporated-by-reference Arbitration provision. Interton objected to the inclusion of the DFC and W.C. claims in the arbitration proceeding, and moved an Israeli district court to limit the scope of the arbitration so as to exclude those two specific claims.

The Israeli district court rejected Interton's objection. Interton asked the Supreme Court of Israel to review the decision. The Supreme Court of Israel also rejected Interton's objection. Focusing on the "relating to (or arising out of)" language in the Arbitration provision, the Supreme Court decided the "arguments concerning conduct of negotiations prior to the engagement in the Investment Agreement" related to or arose out of the Investment Agreement, and thus were within the scope of the Arbitration provision. Id. at 83. As a consequence, the Supreme Court held "the causes of action that are specified in the Statement of Claim submitted by [AVR] against [Interton] should all be heard as part of an arbitration between the parties." Id. at 82. Of course, the causes of action specified in AVR's Statement of Claim included the DFC and W.C. claims.

After a lengthy period (nearly four years) of arbitration proceedings, an Israeli arbitrator ultimately found in favor of AVR on its claim regarding the DFC technology and awarded $2,175,000 on that claim. The arbitrator also found in AVR's favor on the claim regarding the W.C. components and awarded $500,000 on that claim. In addition, the arbitrator awarded one million Israeli New Shekels in fees and expenses.

Interton moved to revoke the arbitrator's award in an Israeli district court, challenging the arbitrator's reasoning and his handling of certain evidentiary issues. Interton failed to deposit a $1 million guarantee that the courts had ordered, however, and the Israeli district court summarily rejected the motion to revoke and entered judgment on the arbitration award. When Interton appealed the judgment, the Supreme Court of Israel denied the appeal and affirmed the arbitrator's award.

One week after the arbitrator's award became final in Israel, in accordance with the Convention, AVR petitioned the federal district court asking it to recognize and enforce the Israeli arbitration award in the United States. Interton opposed the petition, arguing in part that the specific disputes regarding the DFC technology and

the W.C. components fell outside the scope of the Investment Agreement arbitration clause.

The district court granted AVR's petition and confirmed the arbitration award. The district court held Interton agreed to arbitrate all disputes "relating to (or arising from" the Investment Agreement in Israel. The district court further determined Interton had agreed the scope of the arbitration clause would itself be determined by the Israeli courts, in accordance with Israeli law, and the Israeli courts determined the DFC and W.C. disputes fell within the scope of the arbitration clause. The district court therefore determined it was impermissible under the Convention to allow Interton to relitigate the issue of the scope of the arbitration clause in an American court.

Interton filed a timely appeal. On appeal, Interton argues the district court lacked subject matter jurisdiction under the Convention, and renews its contention that the specific disputes regarding the DFC technology and W.C. components fell outside the scope of the arbitration clause in the Investment Agreement.

II

Interton first argues the district court lacked subject matter jurisdiction to enforce AVR's petition. "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011).

Interton contends the district court lacked subject matter jurisdiction because there was no "agreement in writing" to arbitrate the disputes over the DFC technology and W.C. components. Interton relies upon the Eleventh Circuit's decision in Czarina, L.L.C v. W.F Poe Syndicate, 358 F.3d 1286 (11th Cir. 2004). Czarina interpreted certain provisions in the Convention as imposing a threshold jurisdictional

requirement upon a party seeking confirmation of a foreign arbitration award to show the award was entered pursuant to a ***written*** arbitration agreement, i.e., an "agreement-in-writing" requirement.  See id. at 1290-93.  Czarina is factually dissimilar from our case, however, because it is undisputed that Interton and AVR had a written arbitration agreement and the issue is simply whether the agreement covers the specific claims involved; in Czarina there was no written agreement, only sample wording the party seeking confirmation of an award asserted the other party had agreed to.  Id. at 1293.

In a case which is factually similar to ours, where the party seeking confirmation of an award clearly described a written agreement and the issue was simply whether a particular party was subject to the agreement, the Second Circuit rejected the holding of Czarina.  See Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 660 n.2 (2d Cir. 2005).  The Second Circuit discussed whether some cases (including Czarina) had conflated questions that were actually merits-based  (i.e., whether the parties had agreed to arbitrate a particular dispute) into questions of subject matter jurisdiction.  See id. at 660 & n.2.

Even assuming *arguendo* the Convention imposes certain threshold jurisdictional prerequisites upon a party seeking confirmation of an award, AVR satisfied those requirements by providing a certified copy of the arbitration agreement with its petition.  See Convention, Art. IV, 21 U.S.T. 2517 ("To obtain the recognition and enforcement [of a foreign arbitration award], the party applying for recognition and enforcement shall, at the time of the application, supply:  . . . [t]he original agreement referred to in article II [i.e., the 'agreement in writing'] or a duly certified copy thereof.").  The issue before the district court was not whether there *was* a written agreement, but rather whether it covered the disputes involving the DFC technology and W.C. components.  We therefore reject Interton's contention that the district court lacked subject matter jurisdiction.

As an alternative to its jurisdictional argument, Interton argues the district court was obligated to conduct an independent analysis to determine whether the disputes involving the DFC technology and W.C. components fell within the scope of the written arbitration agreement. Interton contends the district court therefore erred when it deferred to the Israeli courts, which had concluded those disputes related to or arose out of the Investment Agreement and thus were within the scope of the written arbitration clause. We reject Interton's alternative argument as well.

Setting Interton's semantics aside, the only defense it has to confirmation of AVR's award is its contention that the disputes involving the DFC technology and W.C. components do not fall within the scope of the Investment Agreement's written arbitration clause. That exact issue was already squarely addressed and rejected by an Israeli district court and the Supreme Court of Israel.

In general, the doctrine of res judicata, or claim preclusion, prevents a party from "relitigating claims and issues that have been previously adjudicated." Black Clawson Co. v. Kroenert Corp., 245 F.3d 759, 763 (8th Cir. 2001). This doctrine may apply even when the claim or issue involved was first litigated in a foreign court. See id. ("Foreign adjudication of an issue may preclude its relitigation in our courts.").

> A foreign judgment is recognized, enforced, and given preclusive effect by a court of this country if the court finds five factors to be present. Shen v. Leo A. Daly Co., 222 F.3d 472, 476 (8th Cir. 2000) (citing Hilton v. Guyot, 159 U.S. 113 (1895)). Previously litigated claims should not be retried if the reviewing court finds that the foreign court provided a full and fair trial of the issues in a court of competent jurisdiction, the foreign forum ensured the impartial administration of justice, the foreign forum ensured that the trial was conducted without prejudice or fraud, the foreign court had proper jurisdiction over the parties, and the foreign judgment does not violate public policy. Shen, 222 F.3d at 476 (citing Hilton, 159 U.S. at 202–03).

Id.

In contesting the preclusive effect of the Israeli court judgments, Interton does not seriously contend the five factors discussed in <u>Black Clawson</u> and <u>Shen</u> are not present here.  Instead, Interton merely reverts back to its contention that there was no written agreement to arbitrate the disputes involving the DFC technology and W.C. components. <u>See</u> Reply Br. at 8.  We are unpersuaded by Interton's circular reasoning. We conclude the five factors necessary to give the Israeli court judgments preclusive effect are present here.  As a consequence, the district court did not err in  granting AVR's petition to confirm the foreign arbitration award.

III

We affirm the district court.

_____