# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1796

———————————————

Curtis Johnson

*Plaintiff - Appellant*

v.

Department of Agriculture, Tom Vilsack, Secretary (USDA); Gary Cochran;
Hendra Woodfork; Shirley Moore; Dotson Collins; James G. Culpepper; Dianna
Shook; Linda Newkirk; Dennis L. Stephens; Linda Baker; Thomas Brown; M.
Terry Johnson; John Doe; Jane Does

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

——————————

Submitted: April 12, 2016
Filed: August 18, 2016

——————————

Before GRUENDER and KELLY, Circuit Judges, and ERICKSEN,[1] District
Judge.

——————————

KELLY, Circuit Judge.

———————————

[1]The Honorable Joan N. Ericksen, United States District Judge for the District
of Minnesota, sitting by designation.

This appeal follows the district court's dismissal of Curtis Johnson's statutory and constitutional claims against the Department of Agriculture (USDA), the Secretary of Agriculture, and various Department of Agriculture employees. Although we agree with some of the district court's bases for dismissal, we disagree that taking advantage of the USDA's internal anti-discrimination complaint procedures can serve as a bar to later bringing federal-law claims in court, or that the existence of those procedures insulates the USDA from constitutional claims. We therefore affirm in part and reverse in part.

## I. Background

As alleged in his complaint, the plaintiff, Curtis Johnson, ran a farm in Monroe and St. Francis Counties in Arkansas until 2000.[2]  In 2000, he and his former wife, Rubye Johnson, took out a loan, secured by mortgages on their property, in the amount of $142,185.47 from the USDA's Farm Service Agency (FSA).  Because of a drought in 2000, Johnson had to stop farming and began to miss payments on his loans.

Starting in July 2001, the FSA began intercepting Johnson's income tax refunds through administrative offsets.[3]  Over the next several years, Johnson tried to settle his debts with the FSA – offering to pay $15,500 in August and September 2003 and November 2004, $1,500 in February 2006, and $100 in December 2006 or January 2007.  The last two attempts included checks for the offered amounts, which the FSA applied towards the loans, but in each case the FSA either did not respond

---

[2]On appeal from a motion to dismiss, we treat the factual allegations in Johnson's complaint as true.  See Wong v. Minn. Dep't of Human Servs., 820 F.3d 922, 926 n.1 (8th Cir. 2016).

[3]Administrative offsets are a way to collect non-tax debts by withholding funds paid out by other federal agencies.

to his offers or only provided him with general information on debt settlement. In January 2008, the USDA began to intercept Johnson's post office salary and pension by administrative offset.

Finally, in October 2009, Linda Newkirk, an FSA employee and a defendant in this case, sent Johnson a letter denying his debt settlement applications. Johnson then met with Dennis Stephens, another FSA employee and defendant, in December 2009 to ask for reconsideration, which was denied. In January 2010, Johnson filed an appeal with the USDA's National Appeals Division (NAD). After conducting a hearing, Thomas Brown, an NAD Hearing Officer, upheld the FSA's denial of Johnson's settlement applications. Johnson then requested a Director's Review, and on August 2010, defendant M. Terry Johnson upheld the FSA's decision.

The allegations discussed so far can be found in the complaint, but the district court relied on additional information deduced from documents attached to the defendants' motion to dismiss Johnson's complaint.[4] The documents indicate that Johnson, who is African American, wrote a letter to USDA's Office of Adjudication & Compliance on August 27, 2010, claiming that the FSA's denials of his debt settlement applications were racially discriminatory, and similar to the discriminatory practices at issue in a class action called Pigford v. Glickman.[5]

---

[4]Johnson argues that it was inappropriate to consider these materials on a motion to dismiss. We disagree. Each of the documents the district court considered was a public record, which a court can rely on even at the motion to dismiss stage. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 (8th Cir. 2012). While it is true, as Johnson says, that the documents were not accompanied by a supporting affidavit, he does not meaningfully contest their authenticity, so the district court was entitled to consider them.

[5]The Pigford litigation was a class-action suit filed in 1997 against the USDA alleging racial discrimination in the administration of federally-funded credit and benefit programs. See Pigford v. Veneman, 292 F.3d 918, 920 (D.C. Cir. 2002).

In response, the USDA's Office of Adjudication, part of its Office of the Assistant Secretary for Civil Rights (OASCR), wrote Johnson to say that it was treating his letter as an administrative complaint to be processed under the procedures codified at 7 C.F.R. Pt. 15d. The responsive letter assigned Johnson's complaint a number and stated that the "accepted issue" raised by the complaint was:

> Whether the officials of the Farm Service Agency (FSA) discriminated against you on the basis of race (Black) when FSA allegedly on or about July 2010, denied you program servicing for debt relief pertaining to a [sic] operating and equipment loans.

It explained that once a position statement was received from the FSA, an investigator would be assigned to the case, and that a Final Agency Decision would be issued after the investigation was complete.

The letter from the Office of Adjudication noted that Johnson's administrative complaint "may be covered by the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. (ECOA)." It also noted that ECOA had a two-year statute of limitations,[6] warned Johnson that "[f]iling an administrative complaint with USDA does not stop

---

Shortly before the suit was settled, the Secretary of Agriculture issued a report concluding that "local credit and loan agencies responsible for administering Department programs often discriminated against the farmers" and USDA officials had "'effectively dismantled' the Office for Civil Rights Enforcement – the very office charged with addressing discrimination complaints." Id. After Congress passed legislation tolling the statute of limitations for filing suits under the Equal Credit Opportunity Act, a statute forbidding discrimination in credit transactions, the parties entered into a consent decree in 1999. See id. (citing Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999)). Johnson was a member of the Pigford class.

[6]The statute of limitations has since been prospectively extended to five years. See Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1085(7), 124 Stat. 1376, 2085 (2010), codified at 15 U.S.C. § 1691e(f).

or suspend that time requirement," and advised him that if he filed a suit in federal court, "USDA may no longer be able to process [his] administrative complaint."

OASCR issued a fifteen-page final agency determination on February 29, 2012. The determination began its analysis by saying that the claim was "properly analyzed under ECOA." Applying a Third Circuit case that held that ECOA claims should be analyzed under a modified version of the framework for adjudicating civil rights complaints developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the final agency determination concluded that the USDA had failed to work with Johnson to give him the chance to make a viable debt settlement offer. OASCR separately entered an order directing the FSA to pay Johnson damages of $30,000, cancel his FSA debt, release its mortgages on Johnson's property, and implement comprehensive remedial action. The FSA has since complied. The final agency determination did not order the FSA to pay back the money it had already collected from Johnson through administrative offset.

Johnson was apparently dissatisfied with OASCR's decision because it allowed FSA to keep the money it had already taken through administrative offset and because it did not award punitive damages. As a result, he filed the present lawsuit on December 21, 2012, against Secretary of Agriculture Tom Vilsack and eleven USDA employees whose names are listed in the caption above (the USDA employee defendants), each in their individual and official capacities. Johnson's complaint claimed that the defendants violated ECOA because they denied his debt settlement offers on the basis of his race and in retaliation for his being a member of the Pigford class-action litigation. He also alleged that the defendants engaged in a conspiracy under 42 U.S.C. § 1985(3) to interfere with his civil rights, and that they violated his rights under the Fifth and Thirteenth Amendments.

On March 16, 2015, the district court granted the defendants' motion to dismiss all of Johnson's claims. Two of the defendants, Dotson Collins and Dianna Shook,

were dismissed because Johnson had failed to timely serve them. The individual capacity claims against Vilsack were dismissed on the grounds that Johnson had not alleged his personal involvement in the actions taken with respect to his debt settlement offers. The constitutional claims against the defendants in their official capacities were dismissed on the grounds of sovereign immunity. The Thirteenth Amendment claims were dismissed on the grounds that that amendment does not create a private cause of action. The conspiracy claims were dismissed on the grounds that no agreement among the defendants had been alleged. Finally, and most significantly for purposes of this appeal, the ECOA claims were dismissed on the grounds that they were precluded by OASCR's administrative proceedings, and, with respect to the USDA employee defendants, on the alternative ground that Johnson had not adequately alleged that they were "creditors" for ECOA purposes.

On appeal, Johnson does not challenge the dismissal of Tom Vilsack in his individual and official capacities, or the dismissal of Dotson Collins and Dianna Shook for failure of service. He also does not challenge the dismissal of his Fifth Amendment claims against the USDA employee defendants in their official capacities, or the Thirteenth Amendment claims against all defendants. He otherwise contends that the district court erred in dismissing his claims.

## II. Discussion

We address first whether the USDA's decision pursuant to the administrative procedures at 7 C.F.R. Pt. 15d precluded Johnson's ECOA claims here. We then address in turn whether he adequately pleaded an ECOA claim, and whether his conspiracy and constitutional claims were properly dismissed.

A. Preclusive effect of administrative proceedings on ECOA claims

The doctrine of claim preclusion, or res judicata, prevents a party from relitigating claims and issues that have been previously adjudicated. AVR Comm'ns, Ltd. v. Am. Hearing Sys., Inc., 793 F.3d 847, 851 (8th Cir. 2015). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." Univ. of Tenn. v. Elliott, 478 U.S. 788, 797–98 (1986) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)); see also Restatement (Second) of Judgments § 83(1) (explaining that with some exceptions "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court"). We review de novo a district court's grant of a motion to dismiss on preclusion grounds. See Corrado v. Life Inv'rs Ins. Co. of Am., 804 F.3d 915, 917 (8th Cir. 2015).

The key qualification in Elliott's formulation is that the administrative agency must be "acting in a judicial capacity" for claim preclusion to apply. See Restatement (Second) of Judgments § 83(2) ("An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication . . . ."). Whether the agency is acting in a judicial capacity, in turn, depends in part on the procedural protections it provides: "Although administrative estoppel is favored as a matter of general policy, its suitability may vary according to . . . the relative adequacy of agency procedures." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 109–10 (1991). As a result, we must examine the procedures the USDA employs to resolve complaints like Johnson's to determine whether preclusion is warranted.

1. Part 15d procedures

Since 1966, the USDA has had internal guidelines prohibiting discrimination in its programs and activities and a mechanism for receiving and dealing with written complaints from individuals who believe they have experienced discrimination at the USDA's hands. See 31 Fed. Reg. 8175 (1966) (promulgating 7 C.F.R. 15.52 (1967), the predecessor to the current 7 C.F.R. 15d.4). Currently, the USDA's anti-discrimination policy provides:

> (a) No agency, officer, or employee of the USDA shall, on the grounds of race, color, national origin, religion, sex, sexual orientation, disabil-ity, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or gender identity, exclude from participation in, deny the benefits of, or subject to discrimination any person in the United States under any program or activity conducted by the USDA.

> (b) No person shall be subjected to reprisal for opposing any practice(s) prohibited by this part, for filing a complaint, or for participating in any other manner in a proceeding under this part.

7 C.F.R. § 15d.3. The regulations setting forth the procedures for processing complaints pursuant to this non-discrimination policy are found at 7 C.F.R. Pt. 15d.

Part 15d's mechanism for investigating complaints of discrimination is wholly a creature of regulation; Congress did not mandate its creation in ECOA or any other law. As the USDA itself explained in a notice of proposed rulemaking, the regulations provide a mechanism for resolving complaints internally and thereby avoiding the need for a lawsuit:

> [I]t should be noted that Part 15d is not an ECOA administrative procedure, nor an administrative procedure pursuant to any other

Federal statute. The proposed regulation merely informs the public of the Department's nondiscrimination policy and of an individual's right to file a complaint if he or she believes that he or she has been discriminated against by the Department so that the Department can take appropriate action. Of course, the availability of 15d and ECOA often will be co-extensive, and it often will be the case that a 15d complaint will afford the Department an opportunity to provide relief to a complainant that may avoid an ECOA lawsuit.

63 Fed. Reg. 62962, 62963 (Nov. 10, 1998).

The body within the USDA responsible for fielding complaints under its anti-discrimination policy has shifted over the years. See 31 Fed. Reg. 8175 (1981) (stating that complaints of discrimination will be investigated by the Office of the Inspector General); 54 Fed. Reg. 31163 (1989) (giving responsibility to the Director of the Office of Advocacy and Enterprise); 64 Fed. Reg. 66709 (1999) (giving responsibility to the Office of Civil Rights). Currently, responsibility lies with OASCR. 7 C.F.R. § 15d.5(b).

Under OASCR's procedures, as counsel for the USDA employees explained at oral argument, an investigator is appointed to develop evidence relevant to the claim. "The investigator is a neutral party who develops the official record of the case. In the course of developing the record, the investigator is usually the person who will have direct contact with the parties, witnesses and other informants." USDA Departmental Manual 4330–1, § 3.II.2a (Oct. 18, 2000), http://www.ocio.usda.gov/sites/default/files/docs/2012/DM4330-001%5B1%5D.pdf [https://perma.cc/EP44-8NC5]. The investigator can collect both documentary and testimonial evidence from the complainant and the USDA, see id. § 3.III.8, but lacks subpoena powers, see id. § 3.II.2.b ("[T]he investigator acts with the same authority as [the Office of Civil Rights] and USDA to collect evidence, in whatever form, that is relevant to the case. This authority, however, stops short of subpoena power.").

Following the investigation, the investigator creates a "record of investigation" or ROI, which is approved by the Chief of the Investigation Unit and forwarded to the Adjudication Unit. See id. § 3.III.13–14. An adjudicator then makes a determination as to whether there was discrimination based on the information in the ROI and issues a Final Agency Decision that must be approved by the Chief of the Adjudication Unit. See id. §§ 3.IV.2–5.

The complainants may be represented by counsel. See id. § 3.I.6j. But as conceded by counsel for the USDA and the individual plaintiffs at oral argument, there is no procedure for questioning evidence submitted by the opposing party, much less an evidentiary hearing – a fact confirmed by the absence of provisions for such procedures in the USDA's manual specifying procedures for Part 15d investigations. See generally USDA Departmental Manual 4330–001, supra.

In addition, there appears to be no avenue for seeking judicial review of OASCR's final decisions.[7] No statute provides for judicial review of decisions under Part 15d, and we believe the Administrative Procedure Act does not do so either. The APA authorizes judicial review of a final agency action, Bowen v. Massachusetts, 487 U.S. 879, 891–92 (1988), but only with respect to claims "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "[Section] 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." Bowen, 487 U.S. at 903 (quoting Attorney General's Manual on the Administrative Procedure Act 101 (1947)).

Judicial review through the APA is precluded because there is an alternative adequate remedy in court in the form of an ECOA suit. See Garcia v. Vilsack, 563

---

[7]Tellingly, we have been unable to find any instance where a district court has actually heard an appeal from a USDA decision pursuant to Part 15d.

F.3d 519, 524–26 (D.C. Cir. 2009).[8]  The basis for Johnson's complaint is that the USDA discriminated against him on the basis of race in administering its loan programs, which is precisely the type of injury ECOA is meant to remedy.  15 U.S.C. § 1691(a)(1).[9]  Because Congress has provided an adequate alternative remedy under

---

[8]The district court cited Garcia for the proposition that there *was* de novo judicial review of proceedings under Part 15d.  See Johnson v. Vilsack, No. 4:012CV00793-JM, 2015 WL 1196764, at *5 (E.D. Ark. Mar. 16, 2015) (citing Garcia, 563 F.3d at 523).  But the portion of Garcia cited by the district court was not speaking of the Part 15d procedures at issue in this case, but rather procedures created pursuant to a special remedial statute passed by Congress in 1998 to deal with discrimination complaints that the USDA had allowed to languish.  See Garcia, 563 F.3d at 521–22; Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105–277, § 741, 112 Stat. 2681–31 (Oct. 21, 1998) (codified at 7 U.S.C. § 2279 note) (Section 741).  In Section 741(c) and (g), Congress explicitly provided for de novo judicial review for complaints under the remedial statute, and it was this procedure that the portion of Garcia cited by the district court was referring to.

Complaints filed pursuant to Section 741 are not handled under the Part 15d procedures, but rather under a separate set of regulations codified at 7 C.F.R. Pt. 15f. The Part 15f procedures, among other things, allow the complainant to request and receive a formal hearing before an ALJ and to depose witnesses.  See Administrative Civil Rights Adjudications under Section 741, 63 Fed. Reg. 67392, 67393 (Dec. 4, 1998); 7 C.F.R. §§ 15f.10, 15f.13, 15f.18.

[9]It may be objected that in saying that an ECOA suit is an adequate remedy in court, we are begging the question by assuming that an ECOA suit would not be precluded – the ultimate issue to be decided in this case.  In fact, it is Congress's decision to pass ECOA to provide a specific remedy for claims like Johnson's, rather than any given plaintiff's ability to file an ECOA suit, that provides the adequate remedy in court and bars APA review. Cf. Mitchell v. United States, 930 F.2d 893, 897 (Fed. Cir. 1991) ("[T]he question posed by APA Section 704 is whether the Claims Court offers adequate remedies, not whether [the plaintiff] will be entitled to receive those remedies.  The Claims Court offers a full and adequate remedy even if [the plaintiff] does not qualify to receive that remedy.").

-11-

another statute, the APA does not authorize judicial review of OASCR's final decisions.  See Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric., 623 F.3d 1142, 1148 (8th Cir. 2011); Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 989 (8th Cir. 2010); Defs. of Wildlife v. Adm'r, E.P.A., 882 F.2d 1294, 1301–03 (8th Cir. 1989).

2. Adequacy of Part 15d procedures

We turn next to whether the procedures just described provide sufficient procedural protections to bar later suits in court based on the same claims.  There is no litmus test for deciding whether agency procedures are extensive enough to warrant granting them preclusive effect.  See 18b Wright & Miller, Federal Practice & Procedure § 4475, at 483 (2d ed. 2002) ("It is difficult to state a general formula to capture the essential elements of adjudicatory procedure that may entitle administrative decisions to preclusion effects in subsequent judicial proceedings.").  Agency procedures run the gamut from proceedings that are essentially identical to those of a trial court, to far more ministerial functions that should not be given preclusive effect:

> When an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating its decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that has used the same procedure.  But the formality may be diminished in any degree, and when it is sufficiently diminished the decision may not be res judicata.  The starting point in drawing the line is the observation that res judicata applies when the agency decision resembles what a trial court does.

2 Richard J. Pierce, Jr., Administrative Law Treatise § 13.3, pp. 1131–32 (5th ed. 2010).  Each agency proceeding must be considered on its own terms to see whether its procedures sufficiently resemble those of the courts.

Despite the lack of bright-line rules in this area, a review of cases from our sister circuits involving administrative preclusion convinces us that the USDA's procedures under Part 15d are too bare bones to bar future federal-court litigation. The Seventh Circuit has held that "[a]n agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." Reed v. AMAX Coal Co., 971 F.2d 1295, 1300 (7th Cir. 1992) (per curiam). The Part 15d procedures would not qualify under this standard, since at least the second, fourth, and sixth prerequisites are missing. See also 18b Wright & Miller, supra, § 4475, at 489 ("[T]he absence of any opportunity to examine or cross-examine live witnesses may defeat preclusion."). Similarly, the Ninth Circuit has held that the availability of judicial review of the administrative decision is a prerequisite for claim preclusion. See Wehrli v. Cty. of Orange, 175 F.3d 692, 694–95 (9th Cir. 1999); see also Restatement (Second) of Judgments § 83, cmt. c ("The fact that an agency adjudication was subjected to judicial review and was upheld is a factor that supports giving it preclusive effect."); 18b Wright & Miller, supra, § 4475, at 491 ("[T]he opportunity for judicial review may prove important in determining the availability of preclusion."). This safeguard, too, is absent here. Cf. Yancy v. McDevitt, 802 F.2d 1025, 1028 (8th Cir. 1986) (holding that school board proceedings had preclusive effect under Iowa law because they provided for "a fairly elaborate scheme of notice, subpoenas, presentation of evidence, cross-examination, decision, and administrative and judicial review"); Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson, 48 F.3d 391, 394–95 (9th Cir. 1995) (holding that an administrative proceeding had preclusive effect because it was conducted in accordance with set rules of practice and procedure, it was presided over by an independent ALJ, the parties were given notice and an opportunity to be heard, the parties were represented by counsel, briefs were filed, evidentiary objections were

made, exhibits were admitted into evidence, and direct testimony and cross-examination were allowed).

In Herrera v. Churchill McGee, LLC, 680 F.3d 539, 548–50 (6th Cir. 2012), the Sixth Circuit found it "somewhat of a close call" whether decisions of a state human rights commission were rendered "in a judicial capacity," given the fact that (as in Part 15d proceedings) evidence was developed by an agency investigator and no hearing was held. The court ultimately concluded that the commission's decision was preclusive, but did so in part because the claimant "seemingly could have responded to any evidence submitted by or obtained from" respondent and could seek "[a]dministrative reconsideration and judicial review" – neither of which was the case here. Id. at 548–49. Under Herrera's standard, if allowing preclusion was a close call, this case would very likely be on the other side of the line.

The Part 15d proceedings resemble "what may be called executive procedure, that is, unilateral decision by an official on the basis of whatever information he deemed it appropriate to take into account. Parties did not have a right to present evidence or argument, and sometimes had no rights of participation at all." Restatement (Second) of Judgments § 83, cmt. b. Administrative actions taken according to such procedures, which were more common in the past, were generally not accorded preclusive effect. See id. We think the same conclusion is appropriate here.

We therefore hold that a final agency decision by the USDA resolving a complaint under 7 C.F.R. Pt. 15d using the administrative procedures currently in effect does not result in claim preclusion. It may be that if the plaintiff prevails on the merits, a court will find that he has already received all the compensation he is entitled to from the Part 15d process, but the administrative proceeding does not operate as an automatic bar to suit.

-14-

B. Adequacy of ECOA pleadings in Johnson's complaint

The district court dismissed the ECOA claims against the USDA employees on the alternative ground that Johnson had not adequately pleaded that they were "creditors," as defined by ECOA and applicable regulations. A "creditor" is defined in ECOA as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit," 15 U.S.C. § 1691a(e), and further defined by ECOA's implementing regulations to include "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit," 12 C.F.R. 202.2(l).

We think it can fairly be inferred from their job titles that Gary Cochran, Hendra Woodfork, Shirley Moore, James G. Culpepper, III, Dennis L. Stephens, and Linda Baker meet the relevant definitions of "creditor." See Miller, 688 F.3d at 933 n.4 (holding that in reviewing a motion to dismiss we draw all inferences in favor of the nonmovant). Each is a Farm Loan Manager, a Farm Loan Officer, or a Farm Loan Chief. It is plausible to suppose that individuals holding these positions will, in the ordinary course of business, regularly participate in a credit decision. We also think that it can be inferred that Linda Newkirk meets the applicable definitions, as she was the one to provide a letter denying Johnson's debt settlement applications. The fact that she denied this debt settlement application indicates that doing so was part of her job duties, making her "a person who, in the ordinary course of business, regularly participates in a credit decision." 12 C.F.R. 202.2(l). We agree with the district court that the complaint does not contain sufficient allegations to state a plausible claim that Thomas Brown and M. Terry Johnson, both of whom are employed with the USDA's National Appeals Division, are creditors for ECOA purposes.

We therefore affirm the dismissal of the ECOA claims with respect to Thomas Brown and M. Terry Johnson, and reverse the dismissal of these claims with respect to the remaining defendants.

## C. Conspiracy claims

Johnson's conspiracy claims under 42 U.S.C. § 1985(3) were properly dismissed. The conspiracy is alleged to have been between employees of the Department of Agriculture. As a result, it is barred under the intracorporate conspiracy doctrine, which shields agents of a single corporation and employees of a single government department acting within the scope of their employment from constituting a conspiracy under § 1985. Meyers v. Starke, 420 F.3d 738, 742 (8th Cir. 2005); see also Larson ex rel. Larson v. Miller, 76 F.3d 1446, 1456 n.6 (8th Cir. 1996).

## D. Bivens claims

Johnson also brought claims for violations of his Fifth Amendment rights under the Bivens doctrine, which allows suits against federal employees for violating constitutional rights. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). The district court dismissed these claims, holding that any constitutional violation was of the sort that cannot be the subject of a Bivens suit because "the design of [the] Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." Schweiker v. Chilicky, 487 U.S. 412, 423 (1988).

The problem with the district court's holding is that the remedial scheme here – the Part 15d process – was not created at the explicit direction of Congress, but rather by the USDA through regulation. See 63 Fed. Reg. 62962, 62963 (Nov. 10,

1998). When a remedial scheme is created entirely by regulation, it does not preclude a <u>Bivens</u> claim. <u>See</u> <u>Krueger v. Lyng</u>, 927 F.2d 1050, 1055 (8th Cir. 1999); <u>Carpenter's Produce v. Arnold</u>, 189 F.3d 686, 689 (8th Cir. 1999). As a result, we must also reverse the dismissal of the <u>Bivens</u> claims.

## III. Conclusion

We affirm the dismissal of Johnson's ECOA claims against Thomas Brown and M. Terry Johnson and the dismissal of his conspiracy claims against all the defendants. We otherwise reverse and remand the case to the district court for further proceedings consistent with this opinion.

_____